(58 Misc. Rep. 55.)

LEWIS BLUEPOINT OYSTER CULTIVATION CO. v. BRIGGS.

(Supreme Court, Special Term, Suffolk County.    February, 1908.)

1. NAVIGABLE WATERS—DREDGING—POWER OF UNITED STATES.
   The United States has authority to dredge land under navigable waters for the purpose of improving navigation without compensation to one to whom it was leased for oyster culture.

2. SAME—INJUNCTION.
   Lessee of land under navigable waters cannot maintain an action to restrain dredging of a channel across the leased land by one under con-

tract with the United States contractor, though plaintiff's lessor is seised thereof in fee simple absolute,

Action by the Lewis Bluepoint Oyster Cultivation Company against J. Marvin Briggs to restrain prosecution of a contractor of dredging across lands under navigable waters. Judgment for defendant.

Asa A. Spear, for plaintiff.

William J. Youngs, U. S. Atty., for defendant.

JAYCOX, J. The plaintiff is the lessee of certain lands under the waters of the Great South bay in the county of Suffolk. These lands are leased for, and, at the time of the commencement of this action, were actually used for the cultivation of oysters, plaintiff at that time having a large quantity of oysters planted thereon. The title of plaintiff's lessor to this submerged land is fixed and settled beyond question. Trustees of Brookhaven v. Strong, 60 N. Y. 56; Lowndes v. Huntington, 153 U. S. 1, 14 Sup. Ct. 758, 38 L. Ed. 615. In addition to this the parties concede such private ownership, and concede that plaintiff's lessor is seized in fee simple absolute of the premises described in the complaint.

The defendant is a contractor, under a contract made with the United States government through its proper officers, under which the defendant engages to dredge a channel 200 feet wide and 2,000 feet long to a depth of 10 feet diagonally across the lands above mentioned, upon which the plaintiff is engaged in oyster cultivation. It is conceded that the waters covering such lands are navigable waters, and are used for commerce and navigation.

This action is brought to restrain the defendant in the prosecution of such work, and thereby this question is presented to the court for determination: Has the defendant herein, under the terms of his contract entered into with the government of the United States, under the provisions of the Constitution and laws of the United States applicable thereto, the right to enter into and upon the said fishing rights and lands under water for the purposes of commerce and of improving navigation, without compensation? In other words, has the United States any right which is paramount to the right of the plaintiff to enter into and upon the fishing rights and lands under water mentioned herein, for the purposes of commerce, without compensating plaintiff?

The plaintiff insists that his title to this land under water is the same as the title to his upland, and without compensation the government has no more right to invade this property than it would have to invade his dwelling house. While the plaintiff's lessor concededly has title to this land under water, and the plaintiff has succeeded to all his rights so far as this action is concerned, I am of the opinion that his title is not and cannot be the same as the title to his upland. It has been held recently that the title to lands under water in this bay is subject to the right of the owner of the adjoining upland to construct a pier on the land under water beyond high-water mark for his own use or the use of the public. Town of Brookhaven v. Smith, 188 N. Y. 74, 80 N. E. 665, 9 L. R. A. (N. S.) 326. It is therefore at

once apparent that the title to such submerged lands is not the same absolute unqualified title as that by which a person holds his uplands. The title to these lands is subject to at least this one easement. In addition to this, is not it subject to the right of the federal government to dredge it for the purpose of improving navigation? These lands were granted by the King of England by three several patents dated 1666, 1686, and 1693, which purported to and did convey all right, title, and interest which he had in and to the premises. At the time of making said patents the title to said lands under water was a part of the jura regalia of the King of Great Britain, by virtue of which he was seised and possessed of an estate in fee simple absolute in said lands, and all the title which he possessed passed under said patents. The said lands were held by the King in trust for the public uses of fishery and navigation and the erection thereon of wharves, piers, lighthouses, beacons, and other facilities of navigation and commerce. The King could grant no title other than he himself held. The title, being subject in his hands to this trust, they passed to his grantee subject to the same trust. Being subject to this trust they were publici juris. In other words, so far as commerce and navigation required, they were held for the use of the people at large.

In Stockton v. Baltimore & N. Y. R. Co. (C. C.) 32 Fed. 9, it was sought at the suit of the Attorney General of the state of New Jersey to restrain the erection of a bridge across Arthur Kill, between New Jersey and Staten Island in New York state, upon the lands of the state of New Jersey situate upon the shore and under the waters of said Kill. It was held that the United States government was not obliged to make compensation for such lands as it occupied for the abutments to said bridge. The opinion indicates that these lands were leased for oyster culture and that the state derived a revenue therefrom; but still it was held that this property is not private property within the intent and meaning of the fifth amendment of the Constitution of the United States. It cannot be that this was because the state owned it, because the United States government has no right to appropriate other species of property belonging to the individual state, and in this very opinion this is conceded as too well established for argument. The reason of it then must be because of something in the title by which this species of property is held; an inherent trust which attaches to this species of property in whosesoever hands it may be, whether individual or corporate, and whether such corporation be public or private. If this species of property in the hands of the state is subject to a trust, how is it impressed? There is no suggestion that it is impressed in any other way or manner than by the nature of the property itself. The trust, if it exists at all, cannot be divested by conveyance to an individual. It must in his hands be subject to the same trust as in the hands of the state.

If the United States government could appropriate without compensation a portion of the property described in the complaint as a site for a lighthouse, or any other aid to navigation, then it must be conceded that it has the right to dredge a channel across this property in aid of navigation. In the Hawkins Point Lighthouse Case (Chappell v. Waterworth [C. C.] 39 Fed. 77) the plaintiff held a grant from

the state of Maryland of the submerged soil upon which the federal government erected a lighthouse, and it had not been condemned or any compensation paid or tendered for it, and the plaintiff had also, as the riparian owner of the neighboring shore, the right to improve out into the river over the lighthouse site. It was there held that the plaintiff's ownership of the soil under navigable waters was subject to the right of the United States in aid of navigation to erect a lighthouse thereon, and that by such use the United States was not taking private property within the meaning of the fifth amendment of the federal Constitution. In the opinion in that case it is said:

"But while the submerged lands remain a part of the bed of the river it is not private property within the meaning of the fifth amendment to the federal Constitution. As was declared in Gilman v. Philadelphia, 3 Wall. (U. S.) 725, 18 L. Ed. 96, the navigable waters 'are the public property of the nation, and subject to all the requisite legislation by Congress.' In the hands of the state or of the state's grantee the bed of a navigable river remains subject to an easement of navigation which the general government can lawfully enforce, improve, and protect."

The navigable waters are concededly a public highway, and the plaintiff's rights in the soil under these waters are similar to those of the owners of the soil in a public highway upon the upland. The owner of the soil in either case is entitled to make such use of the soil as does not interfere with the use of the highway. On the upland the owner has the right to the herbage, to minerals under the soil, and to plant and harvest upon the margin of the highway such crops as do not interfere with the use of the highway. But these rights are at all times subject to the right of the proper authorities to work such highway in such manner as may best fit it for public use, even though it lessen some of the rights of the owner of the soil therein and absolutely destroy some of his rights. The lands under water are, I apprehend, in the same position. The owner may make such use of them as does not interfere with navigation. He may plant his crop and may harvest and market it, but it is all the time subject to hazard of an improvement of the highway in which it is planted. In Lane v. Smith, 71 Conn. 65, 41 Atl. 18, and Lane v. Harbor Commissioners, 70 Conn. 685, 40 Atl. 1058, it was held that the owner of oysters lawfully planted in the bed of a navigable stream is not entitled to compensation when such oysters are destroyed by dredging said stream under competent authority to improve navigation.

These views necessarily lead to the conclusion that the defendant is entitled to judgment dismissing the complaint and dissolving the injunction.

Judgment for defendant.